## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK
## MANHATTAN COURTHOUSE

| | |
|---|---|
| Teal Lebaron, individually and on behalf of all others similarly situated, | 1:22-cv-06262 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Frey Brothers, Inc., | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.  Frey Brothers, Inc. ("Defendant" or "Frey") manufactures, labels, markets, and sells laundry, personal, and home care products through a subscription model initiated through free trials, described in its fine print as "Sample to Subscription."

2.  The subscription economy refers to the exchange of content, products and services for recurring, scheduled payments.

3.  This model benefits companies by establishing a reliable customer base with predictable revenue.

4.  One report claimed the subscription economy is growing nine times faster than the S&P 500.

5.  The subscription economy is based on negative option marketing, where the customer's silence, or non-rejection of goods or services constitutes acceptance.

6.  The name comes from the fact that to cancel their enrollment or agreement, the customer must exercise a "negative option" to affirmatively opt-out of the transactions.

7.  The Federal Trade Commission ("FTC") has identified four main types of negative

option plans.

8.      A continuity plan consumers agree in advance to receive periodic shipments of goods or provision of services and incur charges until they take steps to cancel the arrangement.

9.      Automatic renewal plans involve the automatic renewal of contracts at the end of a fixed period unless consumers instruct otherwise.

10.     Other types include free-to-pay or nominal fee-to-pay conversion plans.

11.     These involve the customers receiving a good or service for a free or nominal price for an introductory period.

12.     However, if the customer does not affirmatively cancel their enrollment, they will be charged a significantly higher amount for the product or service.

13.     A December 2018 report from the Better Business Bureau ("BBB") shows losses in "free trial offer" cases pursued by the FTC over the last ten years exceed $1.3 billion.

14.     From 2015 through 2017, the BBB received 36,986 complaints pertaining to these so-called "free trials."

15.     Data from the FBI Internet Crime Complaint Center suggest that these complaints are on the rise from year to year.

**I.      FREY'S "FREE" TRIALS ARE MISLEADING**

16.     Defendant's practices incorporates several of these elements.

17.     When consumers visit Defendant's website, they are offered to "Try Frey for FREE!"



18.    Should they click "Learn More," they are still told they can "TRY US FOR FREE" and "Try Laundry Care for free," emphasized by the statement, "Free! Just pay $1 Shipping."



19.    Other pages reinforce the "trial" nature of any transaction, asking customers, "What would you want to try!"



20.    Clicking on either option presents parallel offers.

21.    For example, "Let's try Laundry Care" leads to "Try Laundry Care for free. Receive samples of our top-rated laundry detergent in all three amazing fragrances."



22.    Next, customers are presented with "Free! Just Pay $1 Shipping," a "TRY US FOR

FREE" button, and eight "START MY FREE TRIAL" buttons.



23.    Throughout the order process, the only mention of anything "non-free" appears beneath the ordered products, "Personal Care Kit Ships in 18 Days."



24.    After telling consumers over and over they can try Frey for "free" by paying a nominal shipping fee, most consumers will not pay close attention to the small box in the lower right corner of the checkout page which states, "Your Upcoming Subscription," which "Ships in 18 Days" and charges $49 "Every 10 Weeks."



25.    The small print beneath the payment method states:

> By making a purchase, you accept the Terms of
> Service, SMS Policy, and Privacy Policy. Your
> subscription will automatically renew and your
> credit card will be charged the subscription fee. You
> can cancel or modify your plan at any time from your
> profile page.

26.    Despite the promises of a free trial, Defendant enrolls customers in its "Sample to Subscription Plan" without their knowledge.

27.    This is only disclosed separately on a frequently asked questions page, buried through the "Contact Us" link on the bottom of the website, when customers wonder why they were charged.

Why was I charged after ordering a sample bundle?

Our sample bundles are part of our Sample to Subscription Plan and a Complete Package, Lifestyle Kit, Laundry Care Package, or Personal Care Kit will follow unless the subscription is canceled before the trial period is over.
- Purchasing The Detergent Sample Bundle will sign you up for The Complete Package, a Lifestyle Kit, or a Laundry Care Package.
- Purchasing The Body Wash Sample Bundle will sign you up for The Personal Care Kit.

Just a friendly reminder, the subscription can be edited, pushed back, or canceled at any time after purchasing your samples.

Why was I charged after ordering a sample bundle?

Our sample bundles are part of our Sample to Subscription Plan and a Complete Package, Lifestyle Kit, Laundry Care Package, or Personal Care Kit will follow unless the subscription is canceled before the trial period is over.

- Purchasing The Detergent Sample Bundle will sign you up for The Complete Package, a Lifestyle Kit, or a Laundry Care Package.

- Purchasing The Body Wash Sample Bundle will sign you up for The Personal Care Kit.

Just a friendly reminder, the subscription can be edited, pushed back, or canceled at any time after purchasing your samples.

## II.   DEFENDANT ALSO ENROLLS CONSUMERS VIA TEXT MESSAGING

28.   Defendant uses its text messaging program to sign up customers for its free trial when they check the box next to "Send me special offers through text" on the checkout page.

**Send me special offers through text**
I agree to receive recurring automated marketing text messages (e.g. cart reminders) at the phone number provided. Consent is not a condition to purchase. Message & data rates may apply. Message frequency varies. Reply HELP for help and STOP to cancel. View our <u>Terms of Service</u>, <u>SMS Policy</u>, and <u>Privacy Policy</u>.

**Send me special offers through text**

I agree to receive recurring automated marketing text messages (e.g. cart reminders) at the phone number provided. ==Consent is not a condition to purchase==. Message & data rates may apply. Message frequency varies. Relp HELP for help and STOP to cancel. View our <u>Terms of Service</u>, <u>SMS Policy</u>, and <u>Privacy Policy</u>.

29.   The smaller print states that these "special offers" are actually purchases, as Defendant states, "Consent is not a condition to purchase."

30.   Elsewhere on its website, Defendant gives itself permission to "charge [the] customer on a monthly basis for the price of the chosen products … for as long as [the] customer purchases

products through the SMS program."

WHEN CUSTOMER IS ENROLLED IN THE SMS PROGRAM, CUSTOMER
EXPRESSLY ACKNOWLEDGES AND AGREES THAT (A) FREY (OR
FREY'S THIRD PARTY PAYMENT PROCESSOR) IS AUTHORIZED TO
CHARGE CUSTOMER ON A MONTHLY BASIS FOR THE PRICE OF THE
CHOSEN PRODUCTS (IN ADDITION TO ANY APPLICABLE TAXES AND
OTHER CHARGES) FOR AS LONG AS CUSTOMER PURCHASES
PRODUCTS THROUGH THE SMS PROGRAM, AND (B) CUSTOMER'S
ENROLLMENT IN THE SMS PROGRAM IS CONTINUOUS UNTIL
CUSTOMER PAUSES OR CANCELS SUCH ENROLLMENT IN
ACCORDANCE WITH THE TERMS OF THIS AGREEMENT, OR UNTIL
FREY SUSPENDS OR TERMINATES SUCH ENROLLMENT OR THE SMS
PROGRAM. THE MONTHLY COSTS FOR PRODUCTS PURCHASED
THROUGH THE SMS PROGRAM WILL BE CONSISTENT WITH PRICING
AVAILABLE THROUGH THE WEBSITE AT THE TIME OF EACH
PURCHASE. THE AMOUNT CUSTOMER IS CHARGED MAY VARY
DEPENDING ON THE PRODUCTS CUSTOMER PURCHASES.

## III.  PROMISES OF SATISFACTION AND EASY CANCELLATION ARE DECEPTIVE

31.  Defendant assures potential customers it is trustworthy by referencing the "[over] 250,000 customers" who have supposedly given it five star reviews.



32.  Elsewhere in the order process, Defendant reassures customers that its sample products are risk-free, with no catch and no fine print.



33.  The text is also a blurb in which Defendant states that the samples offer is completely

risk-free, with no catch and no fine print, stating:

> It might sound that way, but we're serious. No catch, no fine print. Thousands of customers love FREY, and we're so confident, we want to give you a chance to try us totally risk free. If you don't like us, cancel in your account instantly, or email us and we'll do it for you.

> It might sound that way, but we're serious. No catch, no fine print. Thousands of customers love FREY, and we're so confident, we want to give you a chance to try us totally risk free. If you don't like us, cancel in your account instantly, or email us and we'll do it for you.

34.    The trial info page states that a customer is "free to change or cancel your Frey subscriptions at any time.

**CAN I CANCEL ANYTIME?**

Of course! You are free to change or cancel your Frey subscriptions at any time. We also offer a 100% satisfaction guarantee, so feel secure knowing that you can return any purchase for a refund, for any reason.

**CAN I CANCEL ANYTIME?**

Of course! You are free to change or cancel your Frey subscriptions at any time. We also offer a 100% satisfaction guarantee, so feel secure knowing that you can return any purchase for a refund, for any reason.

35.    Customers have voiced their opinions about Defendant's practices on the internet.

36.    The Better Business Bureau ("BBB") website contains 186 complaints between 2019 and 2022, where Defendant has a 2.89-star rating.

37.    Over half of the complaints are about the misleading free trial.

38.    A sample of the complaints are shown below expressing common grievances about unknowing enrollment in the subscription.

**Complaint Type:** Delivery Issues   **Status:** Resolved 



06/01/2021

My card was charged at $46.15 but I did not buy anything. I didn't even know this was a subscription. I want my subscription cancelled and my money refunded. It's not cool when suddenly you have money missing and made an order you really didn't make. They have samples but don't get them or they'll auto-charge you later. Not happy at all. I also tried to contact them and they are busy as always. I can't even login to the website to try to cancel it! This is ridiculous. They are a scam and shady. I want my money back ASAP.

**Desired Outcome**
Billing adjustment



**Frey Response**

06/04/2021

Hello ****, Thank you so much for reaching out, and we apologize for any inconvenience and misunderstanding. Our samples come with a subscription that you can pause or cancel at any time. The full-sized bundle will be shipped to you after 18 days if the subscription remained active. We put notices before checkout as a heads up, we also send email notifications 4 days before processing an order. After checkout, we automatically send a link to your registered email address to activate your online account. Please check your spam/junk folders, or the Social/Promotions inbox for Gmail. We have canceled your subscription on June 2nd as requested. Rest assured you will not be billed for future shipments. We appreciate you accepting a partial refund for the order that was processed and shipped. Please expect that back to your account within 5 to 10 business days. Thank you for your patience. If you need anything else, let me know if we can help. Sincerely, The FREY Team

**Complaint Type:** Problems with Product/Service   **Status:** Answered 



03/29/2021

This business signed me up for a contract wuth them and charged my credit card without my consent and unknowingly fraudulent company needs to refund my credit cards 85.00

**Desired Outcome**
Other (requires explanation) A total refund of 85.00 charged to my credit card without my consent needs to be refunded in full .this business needs to be shut down



**Frey Response**

04/05/2021

***Document Attached*** Hi there ******, I'm very sorry if there was any misunderstanding with the samples. We try to make it clear that ordering a sample bundle will enroll you into an automatic subscription that renews 18 days after your order. We explain this on the website, on the flyer we send with the samples, and we even email customers 4 days before the subscription renews to avoid any unwanted charges. Please know that customers may cancel or edit the plan at any time and are not forced to pay for full-size products. I checked on my end, and our customer service team actually provided return labels for you to send the products back. Once they start traveling back, we will be able to refund you in full. The labels were provided on March 28th. Could you kindly look into your inbox? If you can't find an email, then it may be on your social/promotion folder or under spam or junk. However, if you would rather keep both packages, I could refund you 50% of the orders! This way you don't have to go through the whole return process. Please let me know what works best for you. If you're going to return them, kindly remember to reach out to our customer service team when you drop off the boxes at the post office so that we can refund you in full. Best, The FREY Team

**Complaint Type:** Billing/Collection Issues   **Status:** Answered 



09/24/2021

Date: 8/11/2021 Amount $98.00 Unauthorized charge with no product or service to show for it. Thank you, ******* *****

**Desired Outcome**
Refund



**Frey Response**

09/27/2021

Hey *******, I hope you're doing well. First of all, I'm very sorry about the inconvenience. I'm sorry if there was any misunderstanding with the sample to subscription program. We try to make it very clear during the entire purchase process that the samples will enroll you in a subscription for a Complete Package that renews 18 days after ordering the samples. We also provided a label for you to return the package. We always honor a full refund if products are returned within 30 days. However, I just checked your charge from my end and your bank won the dispute. You should already have the money on your bank account. If you need anything else, don't hesitate to let us know. Kindly, The FREY Team



**Complaint Type:** Problems with Product/Service     **Status:** Answered ⊙

11/15/2021

In late September or early October, I ordered a free sample from the company. There was a $1 fee for shipping. Nowhere did it state that in 18 days I would be charged for a monthly subscription. On October 29, the took $71 from my bank account. I quickly responded asking them to cancel, because I didn't want a subscription. They were very nice about canceling my payment, and said it could take up to 10 business days to refund my money. As of 11-12-21 the money is still not in my account. When I contacted them they told me the transaction had been canceled on 10-29-21. Still the money has not been returned.

**Desired Outcome**
Billing adjustment

**Frey Response**

11/19/2021

Hello ******, Thank you for taking the time to communicate with us. We are very sorry for any misunderstanding and inconvenience this has caused you. We try to make it clear that ordering a sample bundle will enroll you into a subscription and your first full-sized kit will be shipped after 18 days. You will see the notice on our website before you check out the sample order to make sure you're aware and can cancel the subscription before the trial period ends. The subscription is not mandatory, you can pause or cancel at any time. We have canceled your subscription on October 29th. The order was canceled halfway through the process before we can debit the payment from your card. It was reversed or returned to your bank instead. Please let us know if we can assist you with anything else, we're here to help. Sincerely, The FREY Team

**Complaint Type:** Advertising/Sales Issues     **Status:** Answered ⊙

01/24/2022

I ordered a free sample from Frey and received it weeks ago. This morning I check my phone and see a $70 plus transaction charges to the same card I paid for the $1 shipping fee with. This $70 charge was not authorized by me. I was under no impression that I was subscribing to anything and I expect a refund. Order ID *********************************. I never made any order other than purchasing the initial free trial where I was told I would be charged only $1

**Desired Outcome**
Billing adjustment

**Frey Response**

01/27/2022

Hello ********, Thank you so much for reaching out, and we apologize for any inconvenience and misunderstanding. Our samples come with a subscription that you can pause or cancel at any time. The full-sized bundle will be shipped to you after 18 days if the subscription remained active. We put notices before checkout as a heads up, we also send a welcome email explaining the subscription. This was also included in the sample insert to make sure you are aware and can cancel at any time even before receiving the samples. We have canceled your subscription on January 24th as well as the order that was processed. The refund of $70.15 will be posted on your account within 5 to 10 business days. Thank you so much once again for reaching out. If you need anything else, let me know if we can help. Kindly, The FREY Team

39.     On the internet community site, Reddit.com, customers have warned about the dangers in signing up for Frey's free trials.





40.     On third-party review site, trustpilot.com, Frey customers expressed similar sentiments.

41.     Of the 1,229 reviews, 20% are One-Star (Bad) and 6% are Two-Star (Poor).

42.     Had Plaintiff and proposed class members known the truth about the trials, they would not have signed up nor given their credit card information and would have tried – though likely without success – to cancel their subscriptions before they were charged more than the initial

dollar.

Jurisdiction and Venue

43.    Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

44.    The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

45.    Plaintiff is a citizen of California.

46.    Defendant is a Delaware corporation with a principal place of business in New York County, New York.

47.    The classes of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

48.    The members of the classes Plaintiff seeks to represent are more than 100, because the practices have been ongoing for several years.

49.    The items and subscriptions are marketed to customers through Frey's website and text messaging program.

50.    Venue is in this District because Defendant is subject to personal jurisdiction in this State and is deemed to reside in this District because its contacts are sufficient to subject it to personal jurisdiction here if this District were a separate State.

51.    Venue is in this District because a substantial part of the events or omissions giving rise to these claims occurred here, such as the decisions related to the trials and subscriptions.

52.    Defendant received and processed payments through this District via its payment processors and its website.

53.    This Court has personal jurisdiction over Defendant because it conducts and transacts

business, contracts to supply, and supplies goods within this State and District.

Parties

54.    Plaintiff Teal Lebaron is a citizen of Pollock Pines, California, El Dorado County.

55.    Defendant Frey Brothers, Inc., is a Delaware corporation with a principal place of business in New York, New York County, New York.

56.    Frey was founded in 2016 to bring a masculine perspective to the laundry space.

57.    Their products gained exposure through media attention, such as *The Ellen DeGeneres Show* and *Good Morning America*.

58.    Available sources show Defendant's annual revenue exceeds $5 million.

59.    Defendant has raised almost $6 million in venture capital from a "Who's Who" of Silicon Valley heavyweights, including Y Combinator, an accelerator, AltaIR Capital, 1984 Ventures and UpHonest Capital.

60.    Plaintiff signed up for the free trial, gave her credit card information, and did not expect to be billed beyond the initial one dollar and change for shipping.

61.    Plaintiff relied on the words, terms coloring, descriptions, layout, placement, and/or images from Defendant, in digital and/or social media.

62.    Plaintiff would not have signed up for the trial if she knew it was not free, it would subject her to recurring subscription charges, would be difficult to cancel, and get all her money back.

63.    Defendant provided either no refund or a partial refund to Plaintiff, based in part on its failure to return the money she paid, and on allowing her to keep expensive detergent and/or personal care items she would not have purchased at the prices Defendant listed them at.

64.    Plaintiff is unable to rely on other subscription services which tout their free trials

and risk-free cancellation policies because she is unsure whether those representations are truthful.

Class Allegations

65.    Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **California Class:** All persons in the State of California who purchased the Product during the statutes of limitations for each cause of action alleged; and

> **Consumer Fraud Multi-State Class**: All persons in the States of Connecticut, Kansas, Arkansas, Wyoming, North Dakota, Virginia, New Mexico and Utah who purchased the Product during the statutes of limitations for each cause of action alleged.

66.    Defendant has sold the items through subscriptions to hundreds of thousands of people, such that joinder is impracticable.

67.    Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

68.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

69.    Plaintiff is an adequate representative because her interests do not conflict with other members.

70.    No individual inquiry is necessary since the focus is only on Defendant's practices and the classes are definable and ascertainable.

71.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

72.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

<u>Violation of Unfair Competition Law ("UCL"),</u>
<u>Cal. Bus. & Prof. Code §§ 17200 *et seq.*[1]</u>

73.    Plaintiff incorporates by reference all preceding paragraphs.

74.    Defendant's conduct constitutes an unfair business act and practice because it signs customers up for a free trial and enrolls them in a subscription without their knowledge.

75.    Defendant falsely reassures customers it can easily cancel when they cannot.

76.    Defendant's conduct was and continues to be unfair and fraudulent because it made materially false representations customers were signing up only for a free trial, which would conclude without them being charged more than the one dollar for shipping.

77.    Defendant's misrepresentations constitute an "unlawful" practice because they violate relevant laws, regulations and common law.

78.    Plaintiff signed up to receive the Frey products because it was only one dollar for shipping and she wanted to try them out.

79.    Plaintiff was injured through the monies paid to Defendant.

80.    Plaintiff seeks to enjoin Defendant's future wrongful conduct.

<u>Violation of False Advertising Law,</u>
<u>Cal. Bus. & Prof. Code §§ 17500 *et seq.*</u>

81.    Cal. Bus. & Prof. Code §§ 17500, *et seq.* prohibits untrue and misleading advertising.

82.    Defendant committed acts of false advertising by representing that customers were signing up for a free trial and that they could easily cancel the trial.

83.    Plaintiff relied on the promises through the references to the numerous five star reviews and the "frank" promises of "no fine print" that would ensnare them in a costly subscription.

---

[1] The California statutory claims are asserted on behalf of the California Class.

84.    As a result of Defendant's conduct, Plaintiffs and members of the classes were harmed and suffered actual damages as a result of Defendant's FAL violations because

     a.    they would not have purchased the Product on the same terms if they knew that the Product was not an actual free trial that would end at the conclusion of the trial period with no additional costs incurred or subscription entered into as represented;

     b.    they paid a price premium for the Product based on Defendant's misrepresentations; and

     c.    the Product does not have the characteristics, attributes, features, or benefits as promised.

<u>Violation of the Consumer Legal Remedies Act,</u>
<u>Cal. Civ. Code §§ 1750 *et seq.*</u>

85.    Plaintiff is "consumer[s]," as defined in Civil Code section 1761(d).

86.    At all times relevant, Defendant constituted a "person," as defined in Civil Code section 1761(c).

87.    At all times relevant, the Product manufactured, marketed, advertised, and sold by Defendant constituted a "good," as defined in Civil Code section 1761(a).

88.    The purchases of the Product by Plaintiff and class members were and are "transactions" within the meaning of Civil Code section 1761(e).

89.    Plaintiff believed the items she obtained were part of a free trial and that she could easily cancel.

90.    Defendant's representations and omissions concerning the characteristics, attributes, features, and benefits of the Product were false and/or misleading as alleged herein.

91.    Defendant's false and misleading representations and omissions were designed to, and did, induce the purchase and use of the Product for personal, family, or household purposes

by Plaintiff and class members, and violated and continue to violate the following sections of the
CLRA:

    a.   In violation of Civil Code § 1770(a)(5), Defendant represented that the
items and subscription had characteristics, attributes, features, and
benefits they did not have, such as being "free," and could easily be
cancelled;

    b.   In violation of Civil Code § 1770(a)(9), Defendant advertised the items
and subscriptions with an intent not to sell them as advertised; and

    c.   In violation of Civil Code § 1770(a)(16), Defendant represented the
items and subscription as supplied in accordance with its previous
representations of being free and easy to cancel, when this was false.

92.    Defendant profited from the sale of the falsely, deceptively, and unlawfully
advertised Product to unwary consumers.

93.    Defendant's practices caused harm to Plaintiff and to each class member.

94.    Plaintiff will send a CLRA Notice to Defendant concurrently with the filing of this
action or shortly thereafter, which details and includes these violations of the CLRA, demand
correction of these violations, and provide the opportunity to correct these business practices. Cal.
Civ. Code § 1782(a),

95.    If Defendant does not correct these business practices, Plaintiff will amend or seek
leave to amend the Complaint to add claims for monetary relief, including restitution and actual
damages under the CLRA.

Violation of the Automatic Renewal Law ("ARL"),
Cal. Bus. & Prof. Code § 17600, *et seq.*

96.   Defendant did not disclose the automatic renewal offer terms ("AROT") in a clear and conspicuous manner before Plaintiff signed up and paid for the trial.

97.   Defendant failed to present the trial terms in a clear and conspicuous manner.

98.   Instead, the trial terms are confusing, overreaching, and inconsistent.

99.   The terms are presented in smaller font that fails to get the customer's attention and are insufficient to counter the numerous references to the "free" trial.

100.  Defendant failed to obtain Plaintiff's affirmative consent to enroll in the subscription before charging her.

101.  Defendant failed to provide an adequate post-transaction acknowledgement of the parties' obligations.

102.  Defendant failed to provide a way for Plaintiff to cancel her enrollment in the same way she was unknowingly signed up, through her online account.

103.  Defendant presents a gauntlet of screens when customers seek to cancel.

104.  This includes numerous pop-up screens with attempts at preventing them from cancelling by offering lower prices and discounts.

105.  If the customer gets through all of the screens without giving up, Defendant still requires them to send a text message or an email.

106.  Neither of these methods are guaranteed to end the customer's enrollment and continuous charges, as Defendant fails to adequately process the cancellation requests.

107.  Defendant seeks all applicable damages and penalties.

Violation of State Consumer Fraud Acts

(Consumer Fraud Multi-State Class)

108.   The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

109.   The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

110.   Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct.

111.   As a result of Defendant's use of artifice, and unfair or deceptive acts or business practices, the members of the Consumer Fraud Multi-State Class sustained damages.

112.   Defendant's conduct showed motive and a reckless disregard of fair play such that an award of punitive damages is appropriate.

Fraud

(California and Multi-State Class)

113.   Defendant misrepresented and omitted attributes and qualities of the trial because it was not free.

114.   Defendant's trial was designed to obtain the customer's credit card information not for shipping, but to charge them for subscriptions when they unknowingly failed to cancel subscriptions they were not aware of signing up for.

115.   Defendant had actual and constructive knowledge of the falsity and deception of its actions and how customers like Plaintiff were negatively affected through the numerous

complaints it responded to on the website of the BBB.

Unjust Enrichment

(California and Multi-State Class)

116.   Defendant obtained benefits and monies because the trial Plaintiff and class members agreed to was not free, to their detriment and impoverishment, and seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all causes of action so triable.

WHEREFORE, Plaintiff prays for judgment and relief as follows:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. An award of compensatory damages, except for monetary damages under the CLRA;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to the Non-California Consumer Fraud Claims;

5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:         July 23, 2022

Respectfully submitted,

/s/ Spencer Sheehan
_____

Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck, NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com

Don Bivens (*Pro Hac Vice* forthcoming)
Don Bivens PLLC
15169 N Scottsdale Rd Ste 205
Scottsdale AZ 85254
Tel: (602) 708-1450
don@donbivens.com